## LOWRY OIL CORPORATION et al. v. BENNETT et al.   (No. 12088.)

Court of Civil Appeals of Texas. Fort Worth. March 2, 1929.

948

Irving J. Vogel, Luther Hoffman, and Dawson & Holliday, all of Wichita Falls, for appellants.

Kilgore, Rogers & Thornton, of Wichita Falls, for appellees.

DUNKLIN, J. This is an appeal by the Lowry Oil Corporation and J. Lewis Jackson from a judgment rendered against them in favor of L. I. Bennett and M. S. Bennett, doing business under the partnership name of K. M. A. Fuel Oil Company. Plaintiffs' suit was to recover the value of fuel oil sold by them to James Ferguson and used by him in the drilling of an oil well on 25 acres of land situated in Archer county; a verified account of those sales being attached to the plaintiffs' petition as a part thereof.

James Ferguson, W. J. Blake, J. M. Hobbs, J. Lewis Jackson, and the Lowry Oil Corporation were all made defendants in the suit, and judgment was rendered against each and all of them in plaintiff's favor for the sum of $542.96, the amount due as shown by the itemized account. There was a judgment in favor of J. Lewis Jackson over against the Lowry Oil Corporation on his cross-action against that defendant, for the same amount as plaintiffs recovered against him. The Lowry Oil Corporation has also appealed from that judgment. No appeal has been prosecuted by the defendants Ferguson, Blake, and Hobbs.

The defendants were all sued as partners, the alleged partnership liability being based on allegations that each of defendants owned an undivided interest in an oil lease on the land mentioned above, and each was entitled, under an agreement with the other co-owners, to a proportionate part of the net profits derived from the drilling of a well upon the land in question; and that the oil for which this suit was instituted was used in drilling operations on the land for the discovery of oil. It was further alleged in that connection that the oil was sold with the knowledge, consent, and acquiescence of each and all of the defendants. It was further alleged that if defendants were not general partners, then they were mining partners and liable as such by reason of the fact that they jointly agreed to place in a common enterprise capital and labor for the purpose of drilling a well for oil and gas, and that they would receive therefrom their proportionate parts of the net proceeds as such.

The evidence showed without controversy the following facts: On June 2, 1925, James Ferguson employed J. Lewis Jackson to haul a drilling rig and place the same on the lease, promising to pay Jackson for such hauling a one-sixteenth interest in the lease, and stipulating in his agreement that he (Ferguson) would drill a well on the lease to a depth of 1,600 feet unless oil or gas was found at a lesser depth. That contract recited that Ferguson then had an agreement to put down the well. On June 12, 1925, James Ferguson entered into a contract with J. W. Blake, who was then the owner of the oil lease on the land above mentioned, to drill a well thereon for oil or gas to a depth of 1,600 feet unless oil or gas in paying quantities was found at a shallower depth. In consideration for the drilling of the well, Blake agreed to assign the entire lease to Ferguson, and Ferguson further agreed to carry W. J. Blake for a one-eighth interest in the first well drilled after it was on the pump, free of any cost to Blake; and there was a further stipulation that if the lease should thereafter be further developed, then Blake and Ferguson were to share the expenses pro rata according to their respective interests in the lease. On July 8, 1925, Ferguson conveyed to J. M. Hobbs a one-eighth interest in the same lease, and on the same day Ferguson conveyed to the Lowry Oil Corporation an undivided one-fourth interest in the lease for a consideration of $1,500 paid to him by the grantee. On the same day W. J. Blake entered into a contract with the Lowry Oil Corporation, stipulating that Ferguson would complete the well that he had theretofore contracted to drill without any additional cost or expense to the Lowry Oil Corporation. On July 30, 1925, Ferguson for a consideration of $500 conveyed a one-sixteenth interest in the lease to the Lowry Oil Corporation. On August 14, 1925, a written agreement was executed by and between the Lowry Oil Corporation, W. J. Blake, J. M. Hobbs, James Ferguson, J. Lewis Jackson, and the Lowry-Burns Corporation, in which it was recited that the parties then owned the oil lease in the following proportions: Lowry Oil Corporation six-sixteenths, W. J. Blake two-sixteenths, J. M. Hobbs two-sixteenths, James Ferguson two-sixteenths, J. Lewis Jackson one-sixteenth, Lowry-Burns Corporation three-sixteenths.

The agreement further recited that Ferguson had agreed to drill and complete the first well at his sole expense and it was necessary for some one to take charge of and handle the lease in order to save the cost and expense incident to a receivership of the property. The agreement then stipulated that the Lowry Oil Corporation should have the sole and absolute management of the property on the following terms and conditions, to wit: The assignment to the Lowry Oil Corporation by W. J. Blake of an additional one-sixteenth interest in the lease. It was further stipulated that the Lowry Oil

Corporation did not assume to pay and should in no manner be liable for debts theretofore incurred by Ferguson in the drilling of the well which he had contracted to drill, but in the event the oil runs from the lease thereafter should be credited to Ferguson by the reason of his interest in the lease, then such proceeds as would otherwise be credited to Ferguson would be turned over by the Lowry Oil Corporation to the satisfaction of the debts which Ferguson had theretofore incurred in the drilling of the first well; the application of such funds to such bills to be made by the Lowry Oil Corporation as the agent of Ferguson.

It was further stipulated in the contract that if the Lowry Oil Corporation should advance any money to complete the well theretofore begun by Ferguson, or in any way develop the lease, then all the parties to the agreement should pay such expenses in proportion to the respective interests which they owned in the lease, and the Lowry Oil Corporation should have a special lien on the lease and the equipment thereon to secure it in the payment of the amounts so due it from the other parties. It was further stipulated that the agreement should not be construed in any manner as a copartnership, but that the parties thereto should be considered only as joint owners of the lease, and that the Lowry Oil Corporation in the management of the lease would be understood as acting only as the agent of the other parties to the agreement, such agency being coupled with an irrevocable interest in the lease; and further that in the event no producing well was developed on the lease, then the parties to the agreement, other than the Lowry Oil Corporation, would reimburse it for such expenses in proportion to the interest they owned in the lease respectively.

It was further stipulated that the agreement should not be considered or construed as relieving W. J. Blake from his obligation to the Lowry Oil Corporation, of date July 8, 1925, to the effect that the first well on the lease would be completed by Ferguson without any cost or expense to the Lowry Oil Corporation; and that from and after the date of the agreement none of the parties thereto would be authorized to incur any expense or contract any bills which would be chargeable to the lease or any interest therein, save such expenses and bills as might be incurred by the Lowry Oil Corporation in the management of the lease.

On the same date of the agreement, W. J. Blake transferred a one-sixteenth interest in the lease to the Lowry Oil Corporation as he agreed to do by the terms of the lease. And on the 15th of August, 1925, Blake conveyed his remaining one-sixteenth interest in the lease to the Lowry Oil Corporation. On November 3, 1925, J. M. Hobbs conveyed a one-eighth interest to the Lowry Oil Corporation.

On November 3, 1925, James Ferguson conveyed to the Lowry Oil Corporation a three-sixteenths interest in the lease.

■■ It thus appears that the Lowry Oil Corporation bought interests in the lease after Ferguson had contracted to drill the first well and with an express and specific understanding that Ferguson would carry out his contract without any expense to the Lowry Oil Corporation; and, as shown by the account attached to plaintiffs' petition, the oil for which plaintiffs sued was sold by them to Ferguson alone. It further appears from the items in the account that the greater portion of the oil was furnished to Ferguson prior to the purchase by the Lowry Oil Corporation of any interest in the lease. It is to be noted further that none of the oil so furnished was furnished to the Lowry Oil Corporation after it undertook the management of the lease, and that it was specifically agreed by all of the parties interested in the lease that the corporation would not be liable for any of the oil theretofore furnished to Ferguson.

Notwithstanding the fact that after the Lowry Oil Corporation became the owner of the interests in the lease it would be entitled to share in the profits arising from the development of the lease, yet, under the undisputed facts recited above, it could not be held liable as a partner with Ferguson for the oil purchased by the latter. Bolding v. Camp (Tex. Com. App.) 6 S.W.(2d) 94; Fink v. Brown (Tex. Com. App.) 215 S. W. 846, and authorities there cited—all to the effect that the rule that a mere sharing in the net profits fixes the relation of partnership does not obtain in this state. Ferguson v. Rhoades Drilling Co. (Tex. Civ. App.) 271 S. W. 155; Humble Oil & Refining Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528; Mills & Willingham On Oil and Gas, page 276; New Amsterdam Cas. Co. v. Harrington (Tex. Civ. App.) 11 S.W.(2d) 533 (writ of error dismissed).

■ We conclude that since J. Lewis Jackson acquired a one-sixteenth interest in the lease in consideration for the hauling of the drilling rig for Ferguson, and did not agree to become liable for any part of the expense that might be incurred by Ferguson in the drilling of the well, but merely agreed to haul the rig in consideration of a transfer to him of one-sixteenth interest in the lease, and the agreement of Ferguson with him to put down the well to a depth of 1,600 feet, he likewise was not a partner with Ferguson in the drilling of the well, and therefore was not liable to the plaintiffs for the oil sold to Ferguson. The authorities cited above we believe support this conclusion as to Jackson to the same extent as they are applicable to the defense of the Lowry Oil Corporation.

With respect to the question of partnership growing out of that transaction, in principle,

Jackson's relation to the development of the lease as a result of Ferguson's contract with him to convey him a one-sixteenth interest in it and to drill the well thereon, for the consideration of hauling the rig, was not different from that of the owner of land who conveys an interest therein in the way of an oil lease, and in consideration therefor the lessee agrees to develop the lease for oil and gas and to pay the lessor a one-sixteenth or some other portion of the oil, which, under authorities cited above, would not create a partnership relation between the lessor and lessee.

We deem it unnecessary to discuss authorities cited by appellees announcing general principles for the determination of the issue as to what constitutes a partnership relation. In 20 R. C. L. p. 800, it is said: "The difficulty of formulating a definition of a partnership at once accurate, comprehensive and exclusive is found to be insuperable." And many authorities are there noted which point out the inaccuracies of nearly all definitions of a partnership laid down by the different courts, as applicable alike in all cases. We believe that the authorities cited above to support our conclusions are decisive of the issues above noted, and are not necessarily in conflict with those cited by the appellees.

For the reasons noted, the judgment of the trial court allowing a recovery in plaintiffs' favor against the Lowry Oil Corporation and J. Lewis Jackson is hereby reversed, and judgment is here rendered that plaintiffs take nothing as against them. It follows therefore that the judgment in favor of J. Lewis Jackson over against the Lowry Oil Corporation on his cross-action for whatever judgment might be rendered in plaintiffs' favor against him must likewise be reversed and judgment here rendered that Jackson recover nothing on his cross-action. The judgment of the trial court against the other defendants who have not appealed is left undisturbed.